IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. CIV-17-1243-C |
| GAVIN MARTINDALE, and BLAKE NOVACEK, | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This case arises out of an insurance coverage dispute between Plaintiff Shelter and Defendants Martindale and Novacek. Plaintiff filed this action seeking a declaration of the parties' rights. There is an underlying state action ("Underlying Lawsuit") currently being adjudicated in Cleveland County, Case No. CJ-2018-132. In the Underlying Lawsuit that generated this dispute, Novacek has pursued claims against Martindale for negligence, negligence per se, intentional infliction of emotional distress, and civil conspiracy.

I. Background

In 2015, an incident occurred at the Gamma Phi Chapter of Beta Theta Pi ("Beta") fraternity in Norman, Oklahoma. As a part of the initiation process, the new members were required to participate in various boxing and wrestling matches. In addition, on October 11, 2015, Blake Novacek was called to the Beta fraternity house where Novacek alleges Beta fraternity member Shane Musselmann hit him in the abdomen with a baseball bat and, as a result, he fell backward, hit his head, and was knocked unconscious. The next

morning, at some point after Novacek awoke on a couch in the fraternity house, next to his freshly laundered clothing, he encountered Gavin Martindale who told him "to keep his mouth shut about the incident or Beta would ruin his reputation, damage his property, and have him kicked out of school." (Dkt. No. 25, p. 2.) Martindale alleges that he never threatened Novacek. As a result of these incidents, Novacek brought suit against Beta Theta Pi Corporation of Oklahoma, Gamma Phi Chapter of Beta Theta Pi, Shane Muselmann and Gavin Martindale. Shelter Insurance insures Martindale under his parents' homeowners' insurance policy (the Policy) and is defending Martindale in the Underlying Lawsuit under a reservation of right.

II. Motion to Dismiss

Novacek seeks dismissal or stay of Plaintiff's Complaint for Declaratory Judgment (Dkt. No. 1). As a result of the ongoing Underlying Lawsuit, Novacek argues that there are key factual issues that have yet to be determined and Plaintiff's Complaint should be dismissed or stayed pending the outcome of the Underlying Lawsuit.

In order for Plaintiff to obtain declaratory judgment in this matter, Plaintiff "must overcome two hurdles." Fair Am. Ins. & Reinsurance Co. v. Stewart, 274 F. Supp. 3d 1238, 1244 (N.D. Okla. 2017) (citing Surefoot L.C. v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir. 2008)). "First, a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy.'" Surefoot, at 1240. "Second . . . the Act stipulates only that district courts 'may'–not 'must'–make a declaration on the merits of that controversy" and "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." Id.

See also State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) ("Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so."). Here, Plaintiff Shelter has presented the Court with a suit based on an actual controversy and it is apparent from the facts that a declaratory judgment rendered by this Court will settle the coverage issue. The second factor here also weighs in favor of the Court adjudicating the issue as a declaratory judgment will serve to clarify and settle legal relations. As a result, this Court will exercise jurisdiction and deny Novacek's request to dismiss or stay Plaintiff's Complaint.

III. Motion for Summary Judgment

In order to determine whether coverage exists under the Policy, this Court must first look to the Policy and analyze the relevant portions. The Policy provides the following definitions and information for terms used throughout the insurance document, which specifically define accident, bodily injury, and exclusions under the Policy:

> 1. **Accident** means an action or occurrence, or a series of actions or occurrences, that:
> . . . .
> > (c) Directly resulted in **bodily injury** or **property damage**. If an action or occurrence that started abruptly continues over a period of time and ultimately results in **bodily injury** or **property damage** that cannot be definitely attributed to any one specific action or occurrence, all such **bodily injury** or **property damage** is, under this policy definition, only one accident. . . .
> . . . .
> **Accident** does not mean:
> > (a) An action or occurrence that any **insured** intended to result in **bodily injury**, or **property damage**, of any type;

3

(b) An action or occurrence that is intended by any **insured**, if a reasonable **individual** would expect it to result in **bodily injury**, or **property damage**, of any type; or

(c) An intentional action by any **person** that does not immediately result in **bodily injury** or **property damage**, but ultimately does result in such because of its repetition or the repetition of similar actions.

. . . .

4. **Bodily injury** means:
   (a) A physical injury;
   (b) A sickness or disease of the body;
   (c) The physical pain and physical suffering which directly results from (a) or (b), above; and
   (d) A death which directly results from (a) or (b), above.

**Bodily injury** does not mean:
   (a) A mental injury;
   (b) A sickness or disease of the mind;
   (c) Mental anguish; or
   (d) Emotional distress;
   unless such mental or emotional condition is diagnosed by a medical doctor and directly results from bodily injury to the individual on whose behalf the claim is made.

. . . .

**COVERAGE E - PERSONAL LIABILITY**
ADDITIONAL DEFINITION USED IN COVERAGE E
In Coverage E:
**Damages** means the money an **insured** is legally obligated to pay another person for **bodily injury**, or **property damage**, caused by an **accident**. But **damages** does not include **punitive damages** . . . .

INSURING AGREEMENT
Subject to the limits of **our** liability for this coverage stated in this section, **we** will pay **damages** on behalf of an **insured**.
EXCLUSIONS
**We** do not cover:

**. . . .**

5. **Damages** arising out of **bodily injury** or **property damage** that any **insured** intended to cause.

6. **Damages** arising out of **bodily injury** or **property damage** that a reasonable **individual** would expect to result from the intentional acts of any **insured**.

. . . .

> 17. **Damages** arising out of any activity of any **insured** that would constitute a crime under the laws of the state in which such activity occurred, whether or not such **insured** is actually charged with a crime for that activity.

(Pl.'s Mot., Dkt. No. 16, Ex. 1, pp. 5, 20.)

Pursuant to Oklahoma law, "interpretation of an insurance contract . . . is determined by the court as a matter of law." Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28, ¶ 20, 912 P.2d 861, 869. Additionally, "the insured has the burden of showing that a covered loss occurred." Pitman v. Blue Cross and Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000). "Therefore, summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy." State Farm Fire & Cas. Co. v. Pettigrew, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) (citing VBF, Inc. v. Chubb Grp. of Ins. Cos., 263 F.3d 1226 (10th Cir. 2001)). "[A]n insurance contract should be construed according to the terms set out within the four corners of the document." Pettigrew, 180 F. Supp. 3d at 931. This Court "'will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered,' and neither a 'split in authority over whether a certain term is ambiguous,' nor 'the fact that the parties disagree' alone is sufficient to establish an ambiguity." Id. at 932 (citing BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co., 2005 OK 65, ¶ 6, 148 P.3d 832, 835-36).

Plaintiff asks this Court for summary judgment in this declaratory action and contends there are no genuine issues of material fact alleged by Novacek as to Martindale that would trigger coverage under the Policy. A key policy goal and primary principle of Rule 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex

Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., at 322. It is also well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . which it believes demonstrate the absence of a genuine issue of material fact. Id., at 323. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Plaintiff argues that Martindale's only alleged action was an intentional action and thus not covered under the language of the Policy. Specifically the intentional action was a threat to ruin Novacek's reputation and have him expelled if Novacek reported the action and that this was Novacek's "*sole* allegation." (Pl.'s Mot., Dkt No. 16, p. 8.) Plaintiff also argues that "[t]he action or occurrence is not an accident if the insured intended the harm or if a reasonable person would expect the harm to occur. (Id., at p. 6.) As a result Plaintiff argues that "[i]t is abundantly clear that Martindale's alleged actions . . . are not accidental. Moreover, such threats would be considered an intentional act and any resulting harm would be expected by the insured." (Id.) Plaintiff furthers its argument by stating there was no bodily injury, as required under the insurance policy at issue, alleged to have been caused by Martindale.

6

Martindale argues that Novacek has alleged that his, Martindale's, negligence "caused serious bodily injury to Novacek" and argues that the facts in the underlying state action have yet to be developed. (Def. Martindale's Resp., Dkt. No. 26, pp. 6-7.) Martindale also alleges that "plaintiff has an ongoing duty to defend its insured Martindale in the underlying lawsuit, primarily because the facts related to that lawsuit are still disputed and the claims, as pled, are potentially covered by the Shelter Policy." (Id., at p. 14.) Novacek contends that "Martindale was an active Beta member who had a duty to create and maintain a safe environment for initiating and admitting new members . . . and participated in violent, physical pledge activities." (Def. Novacek's Resp., Dkt. No. 25, p. 8.) Novacek also argues that "[s]ummary judgment may only be granted in favor of an insurer in an insurance coverage dispute when the undisputed facts establish that the insured's claims are not covered." (Id.) Novacek contends Plaintiff has a duty to defend and "under Oklahoma law, an insurer must defend its insured in an action in which the damages sought are potentially within the policy's coverage." (Id., at p. 9.)

Here, the Court finds that Martindale's sole, intentional action was his alleged threat to Novacek. The Second Amended Petition (Complaint, Dkt. 1, Ex. 2) alleges that multiple fraternity members participated in the alleged fight club in the basement of the fraternity house or other initiation proceedings. At no point in Novacek's Second Amended Petition does he make any allegation that Martindale was present during these fights or participated in those fights. In Novacek's Response, he argues that "it is possible the court in the Underlying Action could find Defendant Martindale's actions were negligent rather than intentional." (Def. Novacek's Resp., Dkt. No. 25, p. 10.) However, Novacek fails to cite

a specific incident of material fact regarding Martindale's alleged negligence toward Novacek. Additionally, at one point during Novacek's deposition, he even admitted that the sole allegation against Martindale was a threat:

> Q. . . . Is the only allegation that you're making against Gavin that he allegedly told you not to tell anybody or he would ruin your reputation or your family's reputation?
> A. Yes, sir.
> . . . .
> Q. And at any time did Gavin ruin your reputation or your family's reputation or have you kicked out of school?
> A. No, sir.
> Q. Okay. So the only allegation against my client is that he made a threat to you?
> A. Yes, sir.

(Pl.'s Mot., Dkt. No. 16, Ex. 2, pp. 6-7.) Martindale and Novacek both argue that there are significant issues of fact that remain and as a result, Shelter's motion should be denied. However, from the record before the Court, Novacek's sole allegation against Martindale excludes the possibility of coverage under the Policy. While Novacek's brief, in connection with this Motion, raises arguments regarding potentially negligent scenarios, there are no material facts in the record before the Court that would substantiate a negligence claim. The alleged threat was not an accident and did not result in any bodily injury or property damage to trigger coverage under the Policy. Moreover, Novacek alleges no bodily injury and Martindale did not cause any bodily injury to Novacek. The language of the Policy is clear and unambiguous; Martindale's alleged threat is not covered under the Policy. Plaintiff Shelter does not have a continuing duty to defend Martindale and in viewing the material facts in the light most favorable to the non-moving party, this Court concludes that Plaintiff is entitled to summary judgment as a matter of law.

CONCLUSION

For the reasons set forth herein, Defendant Blake Novacek's Motion to Dismiss and, Alternatively, Request to Stay the Proceedings Pending Resolution of the State Court Case (Dkt. No. 22) is DENIED. Plaintiff Shelter's Motion for Summary Judgment (Dkt. No. 16) is GRANTED. A separate judgment will issue.

IT IS SO ORDERED this 2nd day of January, 2019.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge